UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JUSTIN NELSON, on behalf of himself and   :
others similarly situated,

                                                :

                 Plaintiff,                    Civil Action
      v.                          :         No. 26-11333-WGY

WHALECO INC.,                     :

              Defendant.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANT WHALECO INC.'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION**
**<u>TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT</u>**

Nigel Tamton
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
nigel.tamton@skadden.com

Michael W. McTigue Jr.
Meredith C. Slawe
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
(212) 735-3000
michael.mctigue@skadden.com
meredith.slawe@skadden.com

Kevin S. Ranlett
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
1440 New York Avenue, NW
Washington, DC 200005
(202) 371-7000
kevin.ranlett@skadden.com

*Counsel for Defendant*
*Whaleco, Inc.*

Dated: May 19, 2026

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................................1

RELEVANT BACKGROUND .................................................................................................2

      A.     The Nelsons Are Currently Prosecuting Multiple TCPA Cases In Which They Make Inconsistent Allegations Regarding The Number At Issue ........................2

      B.     Mrs. Nelson Agreed To Receive Communications From Whaleco...........3

      C.     The Nelsons Did Not Place The Number On The National DNC Registry ...........................................3

      D.     Mr. Nelson Claims He Received Unsolicited Text Messages From A Phone Number That Does Not Belong To Whaleco ....................4

      E.     The Number Has Been Associated With A Business Run By Mrs. Nelson .........................................................4

      F.     In March 2026, Mr. Nelson Filed This Action ........................................6

      G.     In April 2026, Whaleco Notified Mr. Nelson Of The Defects In His Claim...................................................6

      H.     The Nelsons Took Steps To Remove Public Information Associating The Number With Mrs. Nelson's Business, But Refused To Withdraw His Counterfactual And Legally Flawed Complaint.................7

LEGAL STANDARDS...............................................................................................................8

ARGUMENT...............................................................................................................................8

    I.     MR. NELSON LACKS ARTICLE III STANDING TO SUE..............................8

      A.     Mr. Nelson Has Not Suffered An Injury In Fact........................................8

      B.     Even If Mr. Nelson Can Claim Injury, It Was Not Caused By Whaleco ....................................................9

    II.    MR. NELSON HAS FAILED TO STATE A CLAIM FOR RELIEF .................10

      A.     The Complaint Tacitly Concedes That Mr. Nelson Did Not Register The Number On The National Do Not Call Registry ................10

      B.     Plaintiff's Section 227(c)(5) Claim Premised On His Receipt Of Text Messages Must Be Dismissed Because That Section's Private Right Of Action Is Limited To "Telephone Calls" .......12

      C.     Section 227(c)(5) Does Not Apply To Text Messages Made To A Cell Phone .............................................19

CONCLUSION.........................................................................................................................20

i

## TABLE OF AUTHORITIES

**CASES**                                                                                                        **PAGE(S)**

*Adzhikosyan v. CallFire, Inc.*,
No. CV 19-246, 2019 WL 7856759 (C.D. Cal. Nov. 20, 2019) .....................................10

*Ahmed v. Hosting.com*,
28 F. Supp. 3d 82 (D. Mass. 2014)...................................................................................8

*Alvarez v. Fiesta Nissan, Inc.*,
No. 7:25-CV-00343, 2026 WL 202930 (S.D. Tex. Jan. 26, 2026) ................................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................8

*Astro Cos. v. Westfax Inc.*,
No. 1:23-CV-02328, 2026 WL 346180 (D. Colo. Feb. 9, 2026) ...................................15

*Barton v. Delfgauw*,
No. 3:21-cv-05610, 2025 WL 2402131 (W.D. Wash. Aug. 18, 2025) ...........................18

*Blow v. Bijora, Inc.*,
191 F. Supp. 3d 780 (N.D. Ill. 2016),
*aff'd on other grounds*, 855 F.3d 793 (7th Cir. 2017) .....................................................13

*Bosley v. A. Bradley Hospitality LLC*,
No. 25-cv-22336, 2025 WL 2686984 (S.D. Fla. Sep. 19, 2025) ...................................18

*Bradford v. Sovereign Pest Control of Texas, Inc.*,
167 F.4th 809 (5th Cir. 2026)........................................................................................15

*Brown v. Nano Hearing Tech Opco, LLC*,
No. 3:24-cv-00221, 2024 WL 3367536 (S.D. Cal. July 9, 2024) ..................................10

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016) ......................................................................................................18

*Chagnon v. Truefort, Inc.*,
772 F. Supp. 3d 198 (D. Mass. 2025).............................................................................8

*Cour v. Life360, Inc.*,
No. 16-cv-00805, 2016 WL 4039279 (N.D. Cal. July 28, 2016)...................................10

*Cunningham v. Autoguard Advantage Corp.*,
No. 3:23-cv-00238, 2024 WL 818381 (W.D.N.C. Feb. 27, 2024) ................................10

*Cunningham v. Britereal Management, Inc.*,
No. 4:20-cv-144, 2020 WL 7391693 (E.D. Tex. Nov. 20, 2020)..................................20

*Cunningham v. Politi*,
No. 4:18-cv-00362, 2019 WL 2519702 (E.D. Tex. Apr. 26, 2019)..................................20

*Cunningham v. Sunshine Consulting Group, LLC*,
No. 3:16-cv-02921, 2018 WL 3496538 (M.D. Tenn. July 20, 2018),
*report and recommendation adopted*, No. 4:20-cv-144, 2020 WL 7388415
(E.D. Tex. Dec. 16, 2020).................................................................................................20

*Davis v. CVS Pharmacy, Inc.*,
797 F. Supp. 3d 1270 (N.D. Fla. 2025) ............................................................ 13, 14, 18

*Dilanyan v. Hugo Boss Fashions, Inc.*,
No. 2:25-cv-05093, 2025 WL 3549868 (C.D. Cal. Dec. 3, 2025) ...................................14

*Duron v. Kings Capital Holding LLC*,
No. 3:25-cv-00149, 2026 WL 319779 (W.D. Tex. Jan. 13, 2026) ...................................18

*El Sayed v. Naturopathica Holistic Health, Inc.*,
No. 8:25-cv-00847, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025) .................................13

*Esquivel v. Mona Lee, Inc.*,
No. 3:25-cv-00607, 2025 WL 3275607 (S.D. Cal. Nov. 24, 2025) .................................18

*Facebook, Inc. v. Duguid*,
592 U.S. 395 (2021) .................................................................................................. 12, 18

*Figueora v. Everalbum, Inc.*,
No. C 17-05909, 2018 WL 3399404 (N.D. Cal. May 9, 2018),
*rev'd on other gronds*, 809 F. App'x 399 (9th Cir. 2020) ..............................................10

*Gaker v. Q3M Ins. Solutions*,
No. 3:22-cv-00296, 2023 WL 2472649 (W.D.N.C. Feb. 8, 2023) ..................................20

*Glasel v. Office Depot, LLC*,
No. 9:24-cv-80910, 2025 U.S. Dist. LEXIS 231053 (S.D. Fla. Nov. 25, 2025) ..............17

*Hernandez v. Bedford Dental L.L.C.*,
No. 25 CV 6787, 2026 U.S. Dist. LEXIS 23208 (N.D. Ill. Feb. 4, 2026).......................18

*Huricks v. Shopkick, Inc.*,
No. C-14-2464, 2015 WL 5013299 (N.D. Cal. Aug. 24, 2015) ......................................10

*Jones v. Blackstone Medical Services, LLC*,
792 F. Supp. 3d 894 (C.D. Ill. 2025),
*appeal filed sub nom.*, No. 25-2398 (7th Cir. Aug. 12, 2025). ........................... 13, 14, 17

*Jones v. Safr Technologies, Inc.*,
793 F. Supp. 3d 362 (D. Mass. 2025)..............................................................................18

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024) ................................................................................ 12, 15

*Martinez-Rivera v. Commonwealth of Puerto Rico*,
812 F.3d 69 (1st Cir. 2016) .................................................................................2

*McGonigle v. Office Depot, LLC*,
No. 25-80069, 2025 U.S. Dist. LEXIS 231061 (S.D. Fla. Nov. 25, 2025) ...................... 17

*McGonigle v. Pure Green Franchise Corp.*,
No. 25-61164-CIV, 2026 WL 111338 (S.D. Fla. Jan. 15, 2026) ..................................... 13

*McGonigle v. Shopperschoice.com, LLC*,
No. 25-152, 2026 U.S. Dist. LEXIS 30157 (M.D. La. Feb. 13, 2026)............................. 18

*McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*,
606 U.S. 146 (2025) ................................................................................ 12, 15

*Mujahid v. Newity, LLC*,
No. 25 C 8012, 2025 WL 3140725 (N.D. Ill. Nov. 10, 2025) ......................................... 18

*Novia v. Mobiz, Inc.*,
No. 25-cv-11036, 2026 WL 770036 (D. Mass. Mar. 18, 2026)....................................... 18

*Piet v. Office Depot*, *LLC*,
No. 24-81488-CIV, 2025 U.S. Dist. LEXIS 230981 (S.D. Fla. Nov. 24, 2025) ............. 17

*Radvansky v. 1-800-Flowers.com, Inc.*,
No. 1:25-cv-2811, 2026 WL 456919 (N.D. Ga. Feb. 17, 2026) ..................................... 13

*Radvansky v. Kendo Holdings, Inc.*,
No. 3:23-CV-00214, 2026 WL 81029 (N.D. Ga. Feb. 12, 2026) ............................. 13, 14

*Rogers v. Assurance IQ, LLC*,
No. 2:21-cv-00823, 2023 WL 2646468 (W.D. Wash. Mar. 27, 2023) ............................ 11

*Rombough v. Robert D. Smith Insurance Agency, Inc.*,
No. 22-cv-15, 2022 WL 2713278 (N.D. Iowa June 9, 2022) ......................................... 11

*Russello v. United States*,
464 U.S. 16 (1983) .......................................................................................15

*Sandoe v. Boston Scientific Corp.*,
333 F.R.D. 4, 10 (D. Mass 2019) ................................................................................11

*Schwartz v. HelloFresh SE*,
No. 1:25-cv-12222, 2026 WL 161514 (D. Mass. Jan. 21, 2026)................................... 18

*Shelton v. Fast Advance Funding, LLC*,
378 F. Supp. 3d 356 (E.D. Pa. 2019)...........................................................................19

iv

*Shelton v. Target Advance LLC*,
No. 18-2070, 2019 WL 1641353 (E.D. Pa. Apr. 16, 2019)................................................9

*Stockdale v. Skymount Property Group, LLC*,
No. 1:25-cv-1282, 2026 WL 591842 (N.D. Ohio Mar. 3, 2026) ......................... 13, 15, 19

*Sundstrom v. Ocean Reef Media LLC et al.*,
No. 3:26-cv-05036, 2026 WL 1361646 (W.D. Wash. May 15, 2026).............................18

*Watkins v. EyeBuyDirect, Inc.*,
No. 1:25-cv-538, 2025 U.S. Dist. LEXIS 167479 (W.D. Tex. Aug. 28, 2025)...............18

*Wilson v. Better Mortgage Corp.*,
No. 25 Civ. 5503, 2025 WL 3493815 (S.D.N.Y. Dec. 5, 2025)......................................18

*Wilson v. MEDVIDI Inc.*,
No. 5:25-cv-03996, 2025 WL 2856295 (N.D. Cal. Oct. 7, 2025) ...................................18

*Wilson v. Skopos Financial, LLC*,
No. 6:25-CV-00376-MC, 2025 WL 2029274 (D. Or. July 21, 2025).............................18

*Wisconsin Central Ltd v. United States*,
585 U.S. 274 (2018) .......................................................................................................19

*Worsham v. Discount Power, Inc.*,
No. 20-0008, 2021 WL 50922 (D. Md. Jan. 6, 2021) ......................................................9

*Wright v. Lyft, Inc.*,
No. 2:14-cv-00421, 2016 WL 7971290 (W.D. Wa. Apr. 15, 2016) ...............................10

## STATUTES & RULES                                                                              PAGE(S)

47 U.S.C. §  227(a) ..............................................................................................................14

47 U.S.C. § 227(b) ...............................................................................................................19

47 U.S.C. § 227(c) ..................................................................................................... 1, 6, 8, 19

47 U.S.C. § 227(e) ...............................................................................................................14

Fed. R.Civ. P. 12(b) ...............................................................................................................2

Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act,
Pub. L. No. 116-105, 133 Stat. 3274 (2019)....................................................................14

## REGULATIONS & ADJUDICATIONS                                                                   PAGE(S)

47 C.F.R. § 64.1200(c).................................................................................................*passim*

47 C.F.R. § 64.1200(e).........................................................................................................17

*Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*,
    7 FCC Rcd. 8752 (1992) ....................................................................................16

*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of*
    *1991*, 18 FCC Rcd. 14014 (2003) ...................................................................16

*Targeting & Eliminating Unlawful Text Messages, Implementation of the Telephone*
    *Consumer Protection Act of 1991, Advanced Methods to Target and Eliminate*
    *Unlawful Robocalls*, 89 Fed. Reg. 5098 (Jan. 26, 2024) ..................................17

## OTHER AUTHORITIES                                                  PAGE(S)

Complaint, *Caplan v. Med. Guardian, LLC*,
    No. 1:25-cv-13959 (D. Mass. filed Dec. 23, 2025) ..........................................11

Complaint, *Wilson v. Wayfair Inc.*,
    No. 1:26-cv-11420 (D. Mass. filed Mar. 24, 2020) ..........................................11

H.R. Rep. No. 102-317 (1991) ..............................................................................13

Oral Argument Hearing Transcript, *Facebook, Inc. v. Duguid*,
    592 U.S. 395 (2021) ..........................................................................................12

## PRELIMINARY STATEMENT

Plaintiff Justin Nelson alleges that Whaleco Inc. sent at least three text messages to a cell phone number registered on the National Do Not Call Registry in violation of Section 227(c)(5) of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5). But Plaintiff lacks standing to bring this action, which is otherwise legally flawed.

This is the twelfth case in four months that Plaintiff or his wife, Michele Nelson, has filed asserting TCPA claims. Here, and in ten other cases, each asserts a TCPA Do Not Call ("DNC") violation. Each of those cases tells the same story of receiving uninvited texts to a cell phone number on the DNC list, entitling one of them to damages and attorneys' fees.

But that story is incomplete. In this case, Mr. Nelson neglects to mention that his wife contractually agreed to receive communications from Whaleco. And while Mr. Nelson alleges in this case that the texted number—(517) 769-XXXX (the "Number")—is **his**, in other cases, he or his wife says it is **her** number. The Nelsons may be flip-flopping so they can sue in the name of whoever did not agree to receive communications (or arbitrate disputes, as Mrs. Nelson did with Whaleco).

There is more. The Nelsons always maintain, as Mr. Nelson does here, that the Number was never used for business purposes. That is because business numbers are not protected by the TCPA's DNC provisions. Yet online listings and Mrs. Nelson's social media posts reveal Mrs. Nelson's business uses the Number. She even lists it on the business's t-shirts.

The face of the complaint reveals other defects. Mr. Nelson uses the passive voice to say the Number "was registered" on the DNC Registry, without saying by whom. Yet he gives a chronology with registration **preceding** the Nelsons' acquiring the Number. That is fatal; registration by the current subscriber is a prerequisite to bringing a TCPA DNC claim.

Moreover, Mr. Nelson's screenshots of the alleged text messages show they came

from a phone number that Whaleco does not control, and appear to have come from a friend of the Number's former subscriber.  In other words, Whaleco did not send the texts.

These issues confirm that Mr. Nelson lacks Article III standing: he neither has suffered an injury in fact nor shown that any such injury was caused by Whaleco.

Finally, even if Mr. Nelson had standing, his claim still fails as a matter of law because the Nelsons did not place the Number on the DNC Registry, and the TCPA's DNC provisions do not apply to text messages or to cell phones.

Thus, the Complaint should be dismissed for lack of standing under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

## RELEVANT BACKGROUND

### A.    The Nelsons Are Currently Prosecuting Multiple TCPA Cases In Which They Make Inconsistent Allegations Regarding The Number At Issue

In the last four months, the Nelsons—often with the same counsel—have filed 12 TCPA cases, with Mr. Nelson the plaintiff in ten and Mrs. Nelson in two.[1]  In this and all but one of the cases, the Nelsons allege that texts sent to his or her cell phone numbers are TCPA DNC violations.  (*E.g.*, Compl. ¶¶ 9-32.)  But two key allegations are inconsistent from case to case:

---

[1]    *See Nelson v. Cap. Vision Servs., LLC*, No. 5:26-cv-10275 (E.D. Mich. Jan. 27, 2026) (filed by Mrs. Nelson); *Nelson v. L J Ross Assocs. Inc.*, No. 2:26-cv-10345 (E.D. Mich. Jan. 30, 2026) (same); *Nelson v. Adwora LLC*, No. 2:26-cv-10423 (E.D. Mich. Feb. 6, 2026) (filed by Mr. Nelson); *Nelson v. Omahasteaks.com, LLC*, No. 2:26-cv-10481 (E.D. Mich. Feb. 11, 2026) (same); *Nelson v. Shutterfly, LLC*, No. 3:26-cv-01900 (N.D. Cal. Mar. 4, 2026) (same); *Nelson v. Whaleco Inc.*, No. 1:26-cv-11333 (D. Mass. Mar. 18, 2026) (same); *Nelson v. Elite Agency LLC*, No. 2:26-cv-11059 (E.D. Mich. Mar. 31, 2026) (same); *Nelson v. Discord, Inc.*, No. 3:26-cv-03217 (N.D. Cal. Apr. 15, 2026) (same); *Nelson v. Javy Coffee Co.*, No. 2:26-cv-01650-RMG (D.S.C. Apr. 20, 2026) (same); *Nelson v. Americ LLC*, No. 2:26-cv-04766 (C.D. Cal. May 2, 2026) (same); *Nelson v. Nat'l Ent. Collectibles Ass'n*, No. 2:26-cv-04999 (D.N.J. May 4, 2026) (same); *Nelson v. Overbrook Life, LLC.*, No. 1:26-cv-00374 (M.D.N.C May 5, 2026) (same). Copies of the complaints are attached as Exhibits S – CC to the Transmittal Declaration of Nigel Tamton, Esq., submitted with this motion.  The Court can take judicial notice of these pleadings and consider exhibits and factual submissions outside the pleadings when ruling on a Rule 12(b)(1) motion to dismiss for lack of standing. *E.g., Martinez-Rivera v. Commonwealth of P.R.*, 812 F.3d 69, 74 (1st Cir. 2016).

**Mr. Nelson identifies two different "residential" cell numbers.** In this case and six others, Mr. Nelson alleges that his "personal residential phone number" is "(517) 769-XXX" (*i.e.*, the Number) and that he "personally pays for this cell phone plan" for his "personal use." (Compl. ¶¶ 9-11, 13; Exs. V ¶¶ 9-11, 13; W ¶¶ 9-11, 13; X ¶¶ 21-23, 25; AA ¶¶ 9-11, 13; BB ¶¶ 15-17, 19; CC ¶¶ 12-14, 16.) But in two cases, he gives a different cell phone number "(517) 750-XXXX" as his line that is for his "personal use only." (Exs. Y ¶¶ 9-11; Z ¶¶ 12-15.)

**The Nelsons alternate who is the Number's subscriber.** In this case and seven others, Mr. Nelson claims to be "the subscriber" of the Number. (Compl. ¶ 9; Exs. U ¶ 10; V ¶ 9; W ¶ 9; X ¶ 21; AA ¶ 9; BB ¶ 15; CC ¶ 12.) Elsewhere, Mr. Nelson alleges that the Number is one his "Spouse uses . . . for personal use only" (Ex. U ¶¶ 10-11), and Mrs. Nelson alleges that the Number is **her** "personal residential telephone number." (Ex. S ¶¶ 8-10.) Mr. Nelson also has admitted in a declaration that his wife has used the Number. (Ex. DD at ¶ 9.)

B.   **Mrs. Nelson Agreed To Receive Communications From Whaleco**

In this case, Mr. Nelson might have alleged that the Number is his because Mrs. Nelson agreed to receive communications from Whaleco. Two years before the alleged texts messages were sent (Compl. ¶¶ 17-18), Mrs. Nelson created an account on Whaleco's Temu app and agreed to the Temu Terms of Use (the "Terms"). (Trinh Decl. ¶ 10.)

Among other things, the Terms state: "you agree to receive communications from us, including via . . . text message." (Ex. L § 6.1.) The Terms also include an arbitration agreement. (Exs. L § 20; M § 19.)

C.   **The Nelsons Did Not Place The Number On The National DNC Registry**

In the Complaint, Mr. Nelson alleges the Number "has been registered"—he pointedly does not say by whom—"with the National Do Not Call Registry since November 13, 2024." (Compl. ¶ 16.) But he also alleges that he has been "the subscriber" of the Number only

"since June of 2025." (*Id.* ¶¶ 9, 16.)  The Number was registered more than six months **before**

Mr. Nelson and his wife allegedly acquired the Number.[2]

### D.    Mr. Nelson Claims He Received Unsolicited Text Messages From A Phone Number That Does Not Belong To Whaleco

In December 2025 and January 2026, Mr. Nelson alleges that Whaleco

"delivered, or caused to be delivered," four text messages to him.  (Compl. ¶ 17.)  He includes

screenshots showing the messages were sent from the number "(517) 962-3724."  (*Id.* ¶ 18.)



Whaleco **does not own or control** that phone number.  (Trinh Decl. ¶ 11.)  That

number appears to have been owned during the relevant time period by a Michigan resident

whose wife is friends with the prior subscriber of the Number.[3]

### E.    The Number Has Been Associated With A Business Run By Mrs. Nelson

Starting at least three months before the alleged text messages were sent, the

Nelsons used the Number for Mrs. Nelson's business, "Jackson County Hands United."  (Ex. K.)

---

[2]    According to publicly available records, before the Nelsons acquired the Number in June 2025, the Number had been assigned to Michigan resident Annette Ostrander.  (Ex. O.)

[3]    (*See* Ex. N (identifying Richard Rice as the user of number (517) 962-3724); Ex. P (social media profile for Lisa Renfer-Rice, identifying Richard Rice as her spouse since 2004); Ex. Q (social media post, identifying Richard Rice as her husband); Ex. O (identifying Annette Ostrander as the Number's prior subscriber and Plaintiff's wife as a subscriber of the Number); Ex. R (social media profile for Lisa Renfer-Rice, identifying Annette Ostrander as a "friend"). *See also* Ex. U ¶ 23 (alleging that the texts at issue "were intended for 'Annette'").)

4

In social media posts about the business, she wrote that "[w]e are officially open for business," announced that her "husband, Justin Nelson, is the Treasurer," and that the business "is also a proud member of the Jackson County Chamber of Commerce." (Exs. H; I; *see also* Ex. E.)

On September 25, 2025, Mrs. Nelson posted a photo of a t-shirt for sale with the Jackson County Hands United logo, which **included the Number** below the logo.[4] (Exs. F-G.)



That's not all. The website of the Jackson County Chamber of Commerce—of which Mrs. Nelson posted that her business, Jackson County Hands United, is a "proud member" (Ex. H)—includes an online listing for Jackson County Hands United (Ex. K)—with the Number identified as the phone number for Mrs. Nelson's business:

---

[4]   The number for Mrs. Nelson's business on the shirt—(517) 769-4094—is the Number in the Complaint. (Ex. A; Compl. ¶ 9.) The shirt also lists another phone number, (517) 750-8933, for a separate business. This appears to be the other cell phone number—(517) 750-XXXX— that Mr. Nelson alleges in some cases is his "residential" line. (Exs. Y ¶¶ 9-10; Z ¶¶ 12-15.)



Non-profit & Charitable Organizations/Foundations

⌖ 50 S. Cooper St., Jackson, MI 49203

☎ (517) 769-4094

@ Send Email

⊕ Visit Website

Hours:

Open 24/7

## About Us

Jackson County Hands United strives to make people's lives better. We want to create a safer, cleaner community. We provide free resources, tree and recycling services. We are also starting up a wrestling camp, which will teach self-defense techniques.

Nevertheless, Mr. Nelson alleges that the Number was "**never** . . . associated with a business."  (Compl. ¶¶ 10, 14 (emphasis added).)

### F.    In March 2026, Mr. Nelson Filed This Action

On March 18, 2026, Mr. Nelson filed this one-count Complaint under the TCPA's DNC provisions.  47 U.S.C. § 227(c)(5).  This Complaint mostly duplicates the Nelsons' other complaints.  But unlike in other complaints, here Mr. Nelson alleges he is "the subscriber" of the Number.  (Compl. ¶ 9.)  He does not mention his and his wife's statements elsewhere that the Number is hers.  Nor does he disclose Mrs. Nelson's relationship with Whaleco.  (*Id.* ¶¶ 16-17.)

### G.    In April 2026, Whaleco Notified Mr. Nelson Of The Defects In His Claim

On April 7, 2026, Whaleco's counsel wrote to the Nelsons' counsel regarding the misstatements in the Complaint and defects with the TCPA claim (Ex. B), including:

- Whaleco did not send the alleged texts;

- Mrs. Nelson, to whom Whaleco is contractually authorized to send communications, has asserted in multiple court filings that she is the subscriber of the Number;

- Publicly available information, including the Jackson County Chamber of Commerce listing and social media postings, reveals that the Number was used for business purposes, making the TCPA's DNC provisions inapplicable;

- Mr. Nelson did not register the number on the DNC Registry, which precludes a TCPA DNC claim; and

- The TCPA's DNC provisions do not apply to text messages.

**H.    The Nelsons Took Steps To Remove Public Information Associating The Number With Mrs. Nelson's Business, But Refused To <u>Withdraw His Counterfactual And Legally Flawed Complaint</u>**

After receiving Whaleco's letter, Mr. Nelson (or someone acting on his behalf) had the Number removed from the online listing for Jackson County Hands United, prompting Whaleco's counsel to write again to ask that evidence about the Number be preserved.  (Ex. C.)

That same day, the Nelsons' counsel responded, insisting that the Number "was never used in connection with [Jackson County Hands United]" and that the online listing for the business had been unauthorized.  (Ex. D.)  Counsel did not address the Jackson County Hands United t-shirts promoted by Mrs. Nelson that listed the Number.  Nor did counsel attempt to rebut the showing that the actual subscriber of the Number is Mrs. Nelson, not Mr. Nelson.

In a tacit concession that the Number had been used for Mrs. Nelson's business, on May 13, 2026, Mrs. Nelson posted that it now has a "new" "business number."  (Ex. J.)



**LEGAL STANDARDS**

**Standing:** "In order for a court to have jurisdiction to hear the merits of a case, the plaintiff must have standing to bring the matter." *Ahmed v. Hosting.com*, 28 F. Supp. 3d 82, 88-87 (D. Mass. 2014) (Young, J.) (dismissing for lack of standing). "Standing cannot be inferred from declarations in the pleadings but must instead be affirmatively established." *Id.*

**Failure to State a Claim:** To state a claim, a complaint must "include sufficient factual allegations that, accepted as true, 'state a claim to relief that is plausible on its face.'" *Chagnon v. Truefort, Inc.*, 772 F. Supp. 3d 198, 206 (D. Mass. 2025) (Young, J.). The Court "must disregard statements [in a complaint] that 'merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action,'" *id.*, and "draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

**ARGUMENT**

**I.    MR. NELSON LACKS ARTICLE III STANDING TO SUE**

To establish standing under Article III of the Constitution, "the plaintiff must satisfy the court that he or she has suffered a 'personal injury fairly traceable to the defendant's allegedly unlawful conduct.'" *Ahmed*, 28 F. Supp. 3d at 87 (Young, J.)

Here, Mr. Nelson alleges a violation of the TCPA's DNC provisions. (Compl. at 9.) But he cannot satisfy the injury or causation requirement to have standing to bring that claim.

**A.    Mr. Nelson Has Not Suffered An Injury In Fact**

Mr. Nelson cannot satisfy the injury in fact requirement because he cannot premise his claim on communications to a business number.

The TCPA's DNC provision and its implementing regulations allow numbers to be added to the Registry and prohibit certain calls to them only if they are for a "residential telephone"—not a business line. *See* 47 U.S.C. § 227(c)(1) (authorizing rulemaking to prevent

8

calls to "residential telephone subscribers"); 47 C.F.R. § 64.1200(c)(2) (prohibiting calls to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry" (quoted in Compl. ¶ 65)).  Courts therefore dismiss DNC TCPA claims for lack of standing if a plaintiff objects to a call to a business number, as there is no injury in fact.  *See*, *e.g.*, *Worsham v. Disc. Power, Inc.*, No. 20-0008, 2021 WL 50922, at *4 (D. Md. Jan. 6, 2021) (dismissing claim where "the subject phone number is a business phone number").

Mr. *Shelton v. Target Advance LLC* is illustrative.  There, the court observed that a plaintiff used his phone number for "personal matters and for a business," noting that the number was listed on the business's website.  No. 18-2070, 2019 WL 1641353, at *1 (E.D. Pa. Apr. 16, 2019).  Because the number was used for business, the court concluded that the plaintiff "does not have standing" to bring his TCPA claim, even though the number was listed on the DNC Registry and may have also been used for personal use, because the number had been "held . . . out to the world as a business phone number." *Id.* at *6.

The same is true here.  Before and after the alleged text messages were sent, the Nelsons publicly represented on t-shirts, social media posts, and online that Jackson County Hands United could be contacted by calling the Number.  Like in *Shelton*, even if the Number was sometimes used for personal calls, its association with a business means that communications to that number would not infringe upon personal privacy sufficient to create an injury in fact under Section 227(c) of the TCPA.

### B.  Even If Mr. Nelson Can Claim Injury, It Was Not Caused By Whaleco

Regardless of whether Mr. Nelson has suffered an injury in fact, he cannot show it was traceable to Whaleco because he cannot establish that Whaleco sent the alleged texts.

Courts routinely dismiss TCPA claims for lack of standing where a plaintiff fails to establish that the defendant, instead of a third party, sent the communication.  For example, in

9

*Brown v. Nano Hearing Tech Opco, LLC*, a TCPA plaintiff alleged receipt of calls "promot[ing]" defendants' products. No. 3:24-cv-00221, 2024 WL 3367536, at *1 (S.D. Cal. July 9, 2024). Nonetheless, the court dismissed for lack of standing because the plaintiff "fail[ed] to plead causation," such as "facts showing that [defendant] or an agent of [defendant] placed any of the calls." *Id.* at *7. *See also*, *e.g.*, *Cunningham v. Autoguard Advantage Corp.*, No. 3:23-CV-00238, 2024 WL 818381, at *5 (W.D.N.C. Feb. 27, 2024) (same where third party made the calls).

So too here. The Complaint reveals that the texts came from a number, (517) 962-3724, that Whaleco's and public records show Whaleco does not control. (Trinh Decl. ¶ 11; Ex. M.) Those messages appear to have been sent by a friend of the prior subscriber of the Number.[5] Mr. Nelson therefore cannot satisfy Article III's traceability requirement.

## II.    MR. NELSON HAS FAILED TO STATE A CLAIM FOR RELIEF

Even if Mr. Nelson has standing, he fails to state a claim for three independent reasons: (a) he does not allege that he registered his number on the DNC Registry; (b) Section 227(c) does not apply to text messages; and (c) Section 227(c) does not apply to cell phones.

### A.    The Complaint Tacitly Concedes That Mr. Nelson Did Not Register The Number On The National Do Not Call Registry

Section 227(c) of the TCPA and its implementing regulations prohibit certain "telephone calls" to a "residential telephone subscriber who has registered his or her telephone

---

[5]    Courts in various procedural postures have rejected TCPA claims against app makers over texts sent by app users. *See Wright v. Lyft, Inc.*, No. 2:14-CV-00421, 2016 WL 7971290, at *2-3, 7 (W.D. Wash. Apr. 15, 2016) (dismissing for failure to state a claim); *Cour v. Life360, Inc.*, No. 16-CV-00805, 2016 WL 4039279, at *4-5 (N.D. Cal. July 28, 2016) (same); *Adzhikosyan v. CallFire, Inc.*, No. CV 19-246, 2019 WL 7856759, at *3-4 (C.D. Cal. Nov. 20, 2019) (same); *Huricks v. Shopkick, Inc.*, No. C-14-2464, 2015 WL 5013299, at *2-5 (N.D. Cal. Aug. 24, 2015) (granting summary judgment); *Figueora v. Everalbum, Inc.*, No. C 17-05909, 2018 WL 3399404, at *4 (N.D. Cal. May 9, 2018) (same), *rev'd on other grounds*, 809 F. App'x 399 (9th Cir. 2020).

number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2). By its plain language, it is the "subscriber"—not a third party—"who has registered" the number on the DNC Registry. Accordingly, courts dismiss claims by plaintiffs who did not **personally register** the number on the DNC Registry. *See*, *e.g.*, *Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV-15, 2022 WL 2713278, at \*2-5 (N.D. Iowa June 9, 2022).

For example, in *Rogers v. Assurance IQ, LLC*, the court dismissed a claim by plaintiffs who "chose to use the passive voice to allege that [the] numbers were 'registered on the National Do Not Call Registry.'" No. 2:21-cv-00823, 2023 WL 2646468, at \*4 (W.D. Wash. Mar. 27, 2023). Because this phrasing obscured whether the plaintiff (or someone else) registered the number, the court held it inadequate to state a claim. *Id.* Similarly, in *Sandoe v. Bos. Scientific Corp.*, Judge Gorton refused to certify a putative class asserting DNC claims because there was no common proof that "the individual who received the call was the individual who registered his or her name on the Do-Not-Call Registry." 333 F.R.D. 4, 10 (D. Mass. 2019).

The Complaint here exhibits the same defect. Mr. Nelson does not allege that he personally put the Number on the DNC Registry. Instead, he uses the same insufficient passive-voice-pleading as in *Rogers*, alleging merely the Number "has been registered with the National Do Not Call Registry since November 13, 2024." (Compl. ¶ 16.) Even if that date was not months **before** Mr. Nelson alleges he acquired the Number (*id.* ¶ 9), this allegation is insufficient to establish that Mr. Nelson personally registered the Number on the DNC Registry.[6]

---

[6]     Mr. Nelson's passive-voice pleading stands in contrast to other TCPA cases brought by his counsel, Paronich Law, including cases brought before this Court. *See*, *e.g.*, Complaint at 5, *Caplan v. Med. Guardian, LLC*, No. 1:25-cv-13959 (D. Mass. filed Dec. 23, 2025) ("Plaintiff personally placed his telephone number on the National Do-Not-Call Registry."); Complaint at 3, *Wilson v. Wayfair Inc.*, No. 1:26-cv-11420 (D. Mass. filed Mar. 24, 2020) ("Plaintiff had registered his number on the National Do Not Call Registry.").

**B.      Plaintiff's Section 227(c)(5) Claim Premised
On His Receipt Of Text Messages Must Be Dismissed Because
That Section's Private Right Of Action Is Limited To "Telephone Calls"**

When the TCPA was enacted in 1991, text messaging technology was not available to consumers.  That fact alone precludes interpreting Section 227(c)(5)'s reference to "telephone calls" to include text messages: as the Supreme Court stated in *Loper Bright Enterprises v. Raimondo*, "every statute's meaning is fixed at the time of enactment."  603 U.S. 369, 400 (2024).  That directive in *Loper Bright* (2024) was consistent with the Court's prior observation in *Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021), that when construing the TCPA, "[t]his Court must interpret what Congress wrote."  *Id.* at 409.  It is also consistent with the Court's subsequent holding in *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, that a federal court must "interpret the TCPA under ordinary principles of statutory interpretation" and "independently determine for itself whether the agency's interpretation of a statute is correct."  606 U.S. 146, 152, 155 (2025).

Even though one justice remarked at oral argument in *Duguid* that "I am interested in why a text message is considered a call under the TCPA," Oral Argument Transcript at 7:12-14, *Duguid*, 592 U.S. (Thomas, J), the Court's opinion did not address that issue because it had not been presented for the Court's resolution.  *See Duguid*, 592 U.S. at 400 n.2.  But resolution of that issue is necessary here: if this Court holds that a "telephone call" does not include a "text message" for purposes of Section 227(c)(5), then this action should be dismissed with prejudice.

**1.      The Plain Language of Section 227(c)(5) Shows That It Applies
Only To "Telephone Calls" And Does Not Apply To Text Messages**

Section 227(c)(5) states clearly and unambiguously that it applies to "telephone call[s,]" not any other type of conduct:

12

> A person who has received more than one *telephone call* within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may . . . bring in an appropriate court . . . an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation . . .

47 U.S.C. § 227(c)(5) (emphasis added).  It does not reference—and thus does not apply to—text messages.  That should be the beginning and end of the Court's analysis.

Numerous courts have held that "[t]he statutory text here is clear that only telephone calls are actionable under § 227(c)(5), not text messages."  *Radvansky v. 1-800-Flowers.com, Inc.*, No. 1:25-CV-2811, 2026 WL 456919, at *3 (N.D. Ga. Feb. 17, 2026); *accord Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025) ("The statutory text here *is* clear, and a text message is not a 'telephone call.'" (emphasis in original)); *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025) ("[U]nder a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages."), *appeal filed sub nom.*, No. 25-2398 (7th Cir. Aug. 12, 2025).[7]

That reading of the statute accords with its plain text and it makes good sense. When the TCPA was passed in 1991, text messaging technology was not available to consumers. *See Jones*, 792 F. Supp. 3d at 899 ("Text messaging was not an available technology in 1991." (collecting citations)); *Blow v. Bijora, Inc.*, 191 F. Supp. 3d 780, 786 n.3 (N.D. Ill. 2016), *aff'd on other grounds*, 855 F.3d 793 (7th Cir. 2017) ("The first text message was sent on December 3, 1992.").  In Congress's own words, the statute sought to address marketing conducted via telephone calls and fax machines.  *See* H.R. Rep. No. 102-317, at 5-6 (1991) ("H.R. 1304 is designed to return a measure of control to both individual residential telephone customers and

---

[7]    *Accord Stockdale v. Skymount Prop. Grp., LLC*, No. 1:25-cv-1282, 2026 WL 591842, at *3 (N.D. Ohio Mar. 3, 2026); *El Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-cv-00847, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025); *Radvansky v. Kendo Holdings, Inc.*, No. 3:23-CV-00214, 2026 WL 81029, at *3 (N.D. Ga. Feb. 12, 2026); *McGonigle v. Pure Green Franchise Corp.*, No. 25-61164-CIV, 2026 WL 111338, at *1 (S.D. Fla. Jan. 15, 2026).

owners of facsimile machines.") Nowhere in that legislative history did Congress discuss text messages—because they did not exist. Thus, "the plain meaning of 'telephone call'" in 1991 "could not possibly include a text message." *Dilanyan v. Hugo Boss Fashions, Inc.*, No. 2:25-cv-05093, 2025 WL 3549868, at *2 (C.D. Cal. Dec. 3, 2025).

The fact that other sections of Section 227(c) reference "telephone solicitations," a term defined in the TCPA as "the initiation of a telephone call or message," 47 U.S.C. § 227(a)(1)(4), underscores that Congress deliberately limited the private right of action under Section 227(c)(5) to "telephone calls" only. *See Davis*, 797 F. Supp. 3d at 1274 ("Congress's use of the phrase 'telephone call or message' in a neighboring provision only undermines [Plaintiff's] position" because "[i]t shows that Congress does not use the term 'telephone call' to encompass all 'messages.'"). *See also Radvansky v. Kendo Holdings, Inc.*, No. 3:23-CV-00214, 2026 WL 81029, at *2 (N.D. Ga. Feb. 12, 2026). In any event, "'[t]elephone call or message' could not be interpreted in 1991 to [mean] telephone call or *text* message. . . . Again, a statute's words are given their common meaning as of the time the statute was enacted." *Jones*, 792 F. Supp. 3d at 900.

Congress has amended the TCPA on numerous occasions, including to extend the application of other sections to text messages. In particular, in 2019, Congress amended Section 227(e) of the TCPA to expressly bring text messages within the scope of the Caller ID requirements. *See* Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act, Pub. L. No. 116-105, §§ 10, 133 Stat. 3274, 3284 (2019); 47 U.S.C. §§ 227(e)(8)(A)-(D), (i)(1)-(2), (j)(2). That provision now distinguishes between "a call made using a voice service" and a "text message sent using a text messaging service." 47 U.S.C. § 227(e)(8)(A), (B). Critically, however, Congress has never amended Section 227(c) to encompass text messages. Congress's amendments show that it has expressly considered the

14

role of text messages within the TCPA and has declined to extend Section 227(c) to texts.  *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion").

**2.**    **The FCC's Orders Are Not Entitled To Deference And In Any Event Cannot Support Applying Section 227(c)(5) To Text Messages**

Until recently, federal courts were generally of the view that they lacked jurisdiction to interpret the TCPA *de novo* or to review the FCC's final orders under the Hobbs Act.  But two recent Supreme Court decisions have made clear that federal courts must exercise their authority to "interpret the TCPA under ordinary principles of statutory interpretation." *McLaughlin*, 606 U.S.at 152.  *See also Loper Bright*, 603 U.S. at 392 (directing courts to "decide whether the law means what the agency says").  Accordingly, district courts are empowered to reject—and have rejected—TCPA claims that fall outside of the scope of the statute's plain language.  *See Bradford v. Sovereign Pest Control of TX, Inc.*, 167 F.4th 809, 810-11 (5th Cir. 2026) (applying *McLaughlin* and dismissing a Section 227(b) putative class action where plaintiff gave "prior express consent" to receive telemarketing calls and rejecting FCC's regulation requiring "prior express *written* consent" because it conflicted with the plain language of the statute).

These courts have further acknowledged that the FCC's orders are no longer entitled to deference.  *See, e.g.*, *Stockdale*, 2026 WL 591842, at *2 ("[R]ecent Supreme Court precedent dictates that this Court must independently—and without any special deference to an agency interpretation—determine the statute's meaning."); *Astro Cos. v. Westfax Inc.*, No. 1:23-CV-02328, 2026 WL 346180, at *1 (D. Colo. Feb. 9, 2026) (holding that under *McLaughlin*, "the Court did in fact have jurisdiction to rule" on the issue of whether the TCPA covers online

15

fax service providers).

To the extent that the Court nonetheless considers the FCC's interpretation, a close reading of the FCC's orders and implementing regulations shows that those agency actions cannot support the proposition that text messages fall within the ambit of Section 227(c)(5)'s private right of action. To begin with, the FCC's original 1992 order regarding implementation of the TCPA made no reference to text messages. *Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8754 (1992) (the "1992 Order"). That is not surprising; the 1992 Order was released before the first text message was sent later that year.

The FCC's subsequent Report and Order released on July 3, 2003, *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14039 (2003) (the "2003 Order"), established "a national do-not-call registry for consumers who wish to avoid *unwanted telemarketing calls.*" *Id.* at 14017 ¶ 1 (emphasis added); *see id.* at 14116 ¶ 166 ("The national do-not-call database will allow for the registration of wireless telephone numbers for those subscribers who wish to avoid *live telemarketing calls* to their wireless phones." (emphasis added)). But the FCC explicitly "decline[d] to make any determination about the specific contours of the TCPA's private right of action" in Section 227(c), reasoning that "it is for Congress, *not the Commission*, to either clarify or limit this right of action." *Id.* at 14136 ¶ 206 (emphasis added). The 2003 Order's discussion of text messages was limited to a single paragraph that discussed **Section 227(b)'s automated technology provisions**. Only in that context did the Order state that "call" encompasses "both voice calls and text calls." *Id.* at 14115 ¶ 165.

On July 25, 2003, the FCC issued certain implementing regulations for the TCPA, including regulations implementing the Do Not Call Registry. *See* 47 C.F.R. § 64.1200(c).

16

While the FCC purported to extend these regulations to "wireless" numbers and "text messages," it did so *only* "to the extent described in [the 2003 Order]." 47 C.F.R. § 64.1200(e).

Perhaps recognizing that the 2003 Order and implementing regulations do not bring text messages within the ambit of Section 227(c), the FCC issued a further order in 2024. *See Targeting & Eliminating Unlawful Text Messages, Implementation of the Telephone Consumer Protection Act of 1991, Advanced Methods to Target and Eliminate Unlawful Robocalls*, 89 Fed. Reg. 5098, 5101 (Jan. 26, 2024) (the "2024 Order"). In the 2024 Order, the FCC "adopt[ed] the proposal to codify the [Do Not Call] Registry's existing protections to text messages." *Id.* at 5099 ¶ 6. But even then, the FCC did not modify the implementing regulations—which as described above only extend the Section 227(c) provisions to "wireless" numbers and "text messages" "to the extent described in [the 2003 Order]." *See Jones*, 792 F. Supp. 3d at 901 ("[T]he FCC's interpretation of call to include text messages is a complicated one, and potentially does not even apply to Section 227(c)(5).").

### 3. Case Law To The Contrary Cannot Be Credited In View Of Section 227(c)(5)'s Plain Text

Some post-*McLaughlin* decisions have erroneously applied Section 227(c)(5) to text messages. The reasoning of those cases is not persuasive: several of them stated that "interpreting the TCPA on a blank slate" they "would tend to agree with the district courts who have determined that a call does not include a text message," but nonetheless deferred to the FCC.[8] The other cases generally failed to perform the statutory analysis required by *McLaughlin*, continued to defer to the FCC's construction of the TCPA, or otherwise relied on

---

[8]    *E.g.*, *Piet v. Off. Depot, LLC*, No. 24-81488-CIV, 2025 U.S. Dist. LEXIS 230981, at *5, n.2 (S.D. Fla. Nov. 24, 2025); *McGonigle v. Off. Depot, LLC*, No. 25-80069, 2025 U.S. Dist. LEXIS 231061, at *6, n.2 (S.D. Fla. Nov. 25, 2025); *Glasel v. Off. Depot, LLC*, No. 9:24-cv-80910, 2025 U.S. Dist. LEXIS 231053, at *6 n.2 (S.D. Fla. Nov. 25, 2025).

pre-*McLaughlin* authority.[9]  The handful of such cases that actually engaged with the text of the statute tie themselves in knots trying to shoehorn text messages into the definition of "telephone call."  *See Alvarez v. Fiesta Nissan, Inc.*, No. 7:25-CV-00343, 2026 WL 202930, at \*5 (S.D. Tex. Jan. 26, 2026) ("[T]o make a 'telephone call,' for purposes of Section 227(c)(5), is to [sic.] 'to get or try to get into communication' with an 'instrument for producing sounds at a distance.' A text message therefore falls reasonably within the literal language of the statute."); *McGonigle v. Shopperschoice.com, LLC*, No. 25-152, 2026 U.S. Dist. LEXIS 30157, at \*8-13 (M.D. La. Feb. 13, 2026) (relying on *Alvarez*); *Wilson v. Better Mortg. Corp.*, No. 25 Civ. 5503, 2025 WL 3493815, at \*5-6 (S.D.N.Y. Dec. 5, 2025) (court refused to "improperly substitute the present-day meaning of 'telephone call' for the ordinary public meaning of that term when § 227(c) was

---

9       *See, e.g.*, *Sundstrom v. Ocean Reef Media LLC et al.*, No. 3:26-cv-05036, 2026 WL 1361646, at \*4, n.2 (W.D. Wash. May 15, 2026); *Hernandez v. Bedford Dental L.L.C.*, No. 25 CV 6787, 2026 U.S. Dist. LEXIS 23208, at \*3 (N.D. Ill. Feb. 4, 2026); *Duron v. Kings Cap. Holding LLC*, No. 3:25-cv-00149, 2026 WL 319779, at \*5 (W.D. Tex. Jan. 13, 2026); *Esquivel v. Mona Lee, Inc.*, No. 3:25-cv-00607, 2025 WL 3275607, at \*2-3 (S.D. Cal. Nov. 24, 2025); *Bosley v. A Bradley Hosp. LLC*, No. 25-cv-22336, 2025 WL 2686984, at \*5 (S.D. Fla. Sep. 19, 2025); *Watkins v. EyeBuyDirect, Inc.*, No. 1:25-CV-538, 2025 U.S. Dist. LEXIS 167479, at \*5-6 (W.D. Tex. Aug. 28, 2025); *Barton v. Delfgauw*, No. 3:21-cv-05610, 2025 WL 2402131, at \*3, n.1 (W.D. Wa. Aug. 18, 2025); *Wilson v. Skopos Fin.*, *LLC*, No. 6:25-CV-00376-MC, 2025 WL 2029274, at \*4 (D. Or. July 21, 2025).  While the courts in *Mujahid v. Newity, LLC*, No. 25 C 8012, 2025 WL 3140725, at \*2-3 (N.D. Ill. Nov. 10, 2025), and *Wilson v. MEDVIDI Inc.*, No. 5:25-cv-03996, 2025 WL 2856295, at \*2-3 (N.D. Cal. Oct. 7, 2025), attempted to engage with the statute, they also continued to defer to the FCC and to rely on pre-*McLaughlin* caselaw.

There are two such cases in this Circuit.  In one, decided shortly after *McLaughlin*, the court appeared unaware of it and so simply followed earlier cases deferring to FCC regulations. *Jones v. Safr Tech., Inc.*, 793 F. Supp. 3d 362, 367 (D. Mass. 2025).  And in the other case, which also ignored *McLaughlin*, the court did not attempt a statutory analysis, as the court misunderstood *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016), as deciding the issue. *Novia v. Mobiz, Inc.*, No. 25-CV-11036, 2026 WL 770036, at \*4 n.2 (D. Mass. Mar. 18, 2026). As other courts have explained, not only had the *Campbell-Ewald* Court merely "assumed, but did not decide, that issue," *e.g.*, *Davis*, 797 F. Supp. 3d at 1273, the Supreme Court later emphasized that it has not "consider[ed] or resolv[ed] that issue." *Duguid*, 592 U.S., 400 n.2.  A third decision seemingly just assumed—without discussion—that Section 227(c) applies to text messages when evaluating a motion to compel arbitration. *See Schwartz v. HelloFresh SE*, No. 1:25-cv-12222, 2026 WL 161514 (D. Mass. Jan. 21, 2026).

18

enacted in 1991" but found it "unpersuasive" that "text messages had not yet been invented when Congress wrote the TCPA").

Some of those decisions suggest that the privacy interests underlying the TCPA warrant rewriting the statute to govern text messages. But legislative purpose cannot overcome clear statutory language. It is up to Congress to "revise statutes in light of new social problems and preferences. Until [Congress] exercises that power, the people may rely on the original meaning of the written law." *Wisconsin Cent. Ltd v. United States*, 585 U.S. 274, 284 (2018); *see also Jones*, 792 F. Supp. 3d at 901 ("It is not for a court to legislate by reading into the TCPA something that is not there."); *Stockdale*, 2026 WL 591842, at *4, n.7 ("If the plain language is not giving effect to Congress's intent, it is for Congress to correct—not the courts.")

In short, following *Loper Bright* and *McLaughlin*, there can no longer be any basis to treat Section 227(c)(5) as governing text messages. Plaintiff's claim under that Section based on text messages must therefore be dismissed with prejudice.

C.    **Section 227(c)(5) Does Not Apply To Text Messages Made To A Cell Phone**

Mr. Nelson's TCPA claim also fails because Section 227(c) applies only to "residential subscribers." 47 U.S.C. § 227(c)(1), (3), (3)(E). Although the FCC's view is that this language should be stretched to cover cell phones, "[r]esidential' is defined as 'used as a residence or by residents,' and 'resident' is defined as 'living in a place for some length of time,' or 'one who resides in a place.'" *Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 363 n.7 (E.D. Pa. 2019) (quoting Merriam-Webster dictionary). This phrase thus refers to a residential landline—not a cell phone. *Id.* By contrast, other TCPA provisions do cover cell phones. *E.g.*, 47 U.S.C. § 227(b)(1)(A)(iii) (discussing prohibitions on calls to "any telephone number assigned to a . . . cellular telephone service"). Thus, the omission of cell phones in Section 227(c) was deliberate, likely reflecting Congress's judgment in 1991 that while cell

phones can readily be turned off or silenced to avoid interruptions, landlines cannot, underscoring the need for a DNC Registry for landlines.

As one court has put it, the "structure and language of the TCPA controvert coverage of cell phones" in Section 227(c). *Gaker v. Q3M Ins. Sols.*, No. 3:22-CV-00296, 2023 WL 2472649, at *3 (W.D.N.C. Feb. 8, 2023); a*ccord Cunningham v. Sunshine Consulting Group, LLC*, No. 3:16-cv-02921, 2018 WL 3496538, at *6 (M.D. Tenn. July 20, 2018) (same), *report and recommendation adopted*, No. 3:16-cv-02921, 2018 WL 5728534 (M.D. Tenn. Aug. 7, 2018); *Cunningham v. Politi*, No. 4:18-CV-00362, 2019 WL 2519702, at *4-5 (E.D. Tex. Apr. 26, 2019) (same), *report and recommendation adopted*, No. 4:18-CV-362, 2019 WL 2526535 (E.D. Tex. June 19, 2019); *Cunningham v. Britereal Mgmt., Inc.*, No. 4:20-cv-144, 2020 WL 7391693, at *7 (E.D. Tex. Nov. 20, 2020) (same), *report and recommendation adopted*, No. 4:20-cv-144, 2020 WL 7388415 (E.D. Tex. Dec. 16, 2020).

Here, Mr. Nelson's Section 227(c) claim is based on test messages to a "cellular telephone number." (Compl. ¶ 9.) Because that provision does not apply to cell phones, Mr. Nelson has failed to state a claim for that independent reason as well.

## CONCLUSION

For the foregoing reasons, Mr. Nelson's complaint should be dismissed for lack of standing or, alternatively, with prejudice for failure to state a claim.

20

Dated: May 19, 2026
      Boston, Massachusetts

Respectfully submitted,


/s/ *Nigel Tamton*
Nigel Tamton (BBO #696396)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
nigel.tamton@skadden.com

Michael W. McTigue Jr. (*pro hac vice*)
Meredith C. Slawe (*pro hac vice*)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
(212) 735-3000
michael.mctigue@skadden.com
meredith.slawe@skadden.com

Kevin S. Ranlett (*pro hac vice*)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
1440 New York Avenue, NW
Washington, DC 200005
(202) 371-7000
kevin.ranlett@skadden.com

*Counsel for Defendant*
*Whaleco Inc.*

21